PRICE, Judge.
Tommy Eubanks brought this action for personal injuries and related expenses alleged to have been caused by the collision of his vehicle with a tank transport on U. S. Highway 165 in Caldwell Parish, Louisiana, on November 18, 1971. Plaintiff named as defendants Isaac Brasseal, driver of the transport; his employers, Rose Oil Company of Dixie; Rose Oil Transport, Inc., and their liability insurer, Travelers Insurance Company.
The trial court rejected plaintiff’s demands on finding he was guilty of negligence which contributed to the cause of the accident. On appeal this court affirmed the judgment of the trial court, 300 So.2d 500. The Supreme Court granted writs of review and reversed the judgment of this court, 310 So.2d 550.
The matter is now before us on remand for the purpose of assessing the amount of damages due plaintiff.
Plaintiff claims substantial damages for personal injuries allegedly resulting from the accident associated with an injury to *80 the cervical and lumbar region of his back. He seeks recovery for pain and suffering endured in the treatment and surgical correction of his spinal injuries; permanent disability and impairment of physical function; loss of earnings, both past and future, and medical expenses incurred in connection with his injury.
The principal issues in dispute in determining damages are:
1. Whether a herniated disc ultimately diagnosed as causing plaintiffs continuation of symptoms of pain and the resultant degree of disability caused by surgical correction thereof was causally related to the accident.
2. Whether the evidence is sufficient to show plaintiff is permanently disabled to perform the manual labor involved in the trade of a pipefitter, which he contends is the usual occupation for which he is best suited by training and experience.
A favorable finding to plaintiff on both of these issues would necessitate a larger award than he would otherwise be entitled. The evidence relating to plaintiff’s injury and his subsequent course of treatment as shown by the record is summarized as follows :
Plaintiff, who was 25 years of age, was self employed at the time of the accident and was driving a one-ton truck with a flat metal bed. The tank transport driven by defendant, Brasseal, struck the rear of plaintiff’s truck with a minimum degree of impact, causing negligible damage to each vehicle. According to his testimony plaintiff developed a rather severe headache immediately after the accident, which he attributed to his head having struck the rear window of the truck cab. As the headaches continued tor the next two days following the accident, plaintiff sought medical attention from Dr. John M. Coats at Mer Rouge. Dr. Coats testified that plaintiff showed symptoms of spasm of the lumbar vertebrae and some minimal loss of the normal curvature of the spine.
Plaintiff was admitted to the Morehouse General Hospital in Bastrop where he remained for 13 days. He was treated by Dr. Coats with cervical and pelvic traction and muscle relaxant drugs. His lumbar region was also treated with deep heat by use of a “sonolator.”
After plaintiff’s discharge from the hospital on December 16, 1971, Dr. Coats continued to treat him for lumbar pain as an outpatient for several weeks. In January, 1972, plaintiff, after consulting with Dr. Coats, sought the services of an orthopedic surgeon, Dr. Robert D. Hightower of Shreveport. Dr. Hightower examined plaintiff initially on January 27, 1972, and concluded at that time his continued complaints of pain in the lumbar region were caused by a lumbosacral strain. Plaintiff was given instructions for flexion exercises to strengthen back muscles and to reduce spasm. He was prescribed muscle relaxant drugs and referred back to Dr. Coats for periodic observation during the anticipated period of recovery.
Plaintiff returned to Dr. Hightower in October, 1972, and a myelogram was performed on his spine by Dr. W. S. Bun-drick, an associate of Dr. Hightower, to determine if plaintiff’s continued symptoms were being caused by a bulging disc. Positive indications received from the myelo-gram resulted in surgery being performed by Dr. Bundrick on October 20, 1972, at Bossier General Hospital. A soft bulging disc was removed at the L 4-5 interspace. Subsequently, on December 18, 1972, a second operative procedure was performed by Dr. Bundrick to remove a recurrent disc on the opposite side of the same L 4-5 disc space.
Dr. Bundrick last examined plaintiff on May 23, 1973, at which time he had satisfactorily recovered from his surgery which apparently had relieved plaintiff’s symptoms of pain.
*81 Defendants primarily contend the evidence is insufficient to show that the herniated disc in plaintiff’s lumbar spine, which was not diagnosed until October of 1972, was caused by the accident which occurred on November 18, 1971. They argue that the extent of the injury to plaintiff which may be causally related to the accident is a strain of the musculature of the cervical and lumbar spine from which he recovered with no resultant disability.
Defendants contend it was just as possible plaintiff sustained the disc injury when he attempted to return to work in May of 1972 performing pipeline work for a period of approximately one month and thereafter driving a produce truck for a short period of time. This work was attempted by plaintiff after the initial X-rays taken by Dr. Hightower failed to disclose the cause of continued pain in the lumbar region was an injured disc. Plaintiff testified his symptoms of pain were present when he undertook to return to work and that the labor involved merely increased the intensity to such an extent he was forced to quit and return home for further medical treatment.
There is no evidence of any further injury to plaintiff during this period, and although it is admitted that a herniated disc can result from normal or usual activities, the medical testimony is unanimous in the instant case that plaintiff’s disc injury more probably originated with the accident.
In his testimony given by deposition, Dr. Hightower explains clearly the factors which influenced his medical opinion that the herniated disc resulted from the accident and we quote the pertinent testimony as follows:
“Q. Now, Dr. Hightower, would you tell me if you could the reason that it was your impression when you first saw him that it was a lumbo-sacral strain and an illeolumbar ligament strain, whereas, the second time you felt it was more indicative of a herniated disc?
"A. Well, the first time I saw him, I couldn’t put my finger on anything specific which is quite frequently the case in injuries or discs like this. Nothing particularly showed except that he did have some spasm in his lumbar area. And he had some questionable hyperthesia or loss of sensation, which was certainly not a clearcut disc. That was the reason that I had the opinion at that time that this was probably a lumbosacral strain. But most lumbosacral strains will subside within a period of six months to nine months and that sort of thing. A.
The second time I saw him he continued to have his pain and he was having leg radiation, and he had a positive straight leg raising test and was still tender in the same areas and was having the same problems that he had before, and this was approximately eleven months later, so I thought that further investigation should be done.
‘Q. Is it fair to say that in general your practice, given these symptoms, is to take a more conservative view at first as to the injury and then that if the symptoms persist to consider something more serious ?
'A. Yes, sir, it is.
‘Q. Was there anything, looking back now. inconsistent or not suggestive of the herniated intervertebral disc at the time you first saw this man on January 27th?
‘A. No, sir.
‘Q. I gather on this particular type disc it can — physicians such as yourself sort of have to look and see how long the symptoms persist before you resort to something as drastic, shall we say, as surgery, or even myelography ?
*82 “A. Yes, sir, that is correct.”
In Jordan v. Travelers Insurance Company, 231 So.2d 678 (La.App. 1st Cir. 1970) the evidence necessary to establish a causal relation of an injury with an accident is discussed as follows:
“For plaintiff to recover for these injuries he must establish that there is a causal relation between the two and that the injuries complained of did in fact result from the accident. In shouldering this burden of proof, probabilities and possibilities are not enough; however, neither is plaintiff required to prove this causal relation beyond a reasonable doubt. The amount of proof required, therefore, involves a question of degree. The answer thereto is one of reasonableness. This is so because not all injuries are susceptible of proof by testimony that is beyond legitimate quandary. It is for this reason that our jurisprudence has provided that the legal requirement for the burden of proof is satisfied when plaintiff has established to a reasonable certainty that the negligent act caused his injuries. To prove less is not enough but to require more would make a plaintiff’s task an unreasonable one and in many cases impossible.”
We think the evidence presented by plaintiff shows to a reasonable certainty that the herniation of the disc was caused by the injury received in the accident of November 18, 1971.
Plaintiff contends he is entitled to a substantial award for loss of past and future earnings as he can no longer carry out the duties of a pipefitter, which is the principal trade for which he has been trained. Although he had not followed his trade for over a year prior to the accident, he contends he is nonetheless entitled to be compensated for this limitation on his ability to return to this work for which he is best trained and suited. Defendants do not take issue with this premise but strenuously argue the evidence does not show plaintiff is unable to perform the duties of a pipefitter or any other related trade requiring some manual labor.
The testimony of Dr. Bundrick, the orthopedic surgeon who performed the two operations on plaintiff, is the principal evidence in the record relating to the issue of physical disability. His supplemental medical report of May 23, 1973, the date he last examined plaintiff, describes plaintiff’s degree of recovery and resulting disability as follows:
“This patient is now five months postoperative excision of recurrent herniated lumbar disc. He states he has mostly back pain in the morning when he arises and is also stiff in the low back when he arises. This gradually improves during the day. He has had no significant leg pain.
“Examination of the back today revealed a moderately good range of motion in all planes, and there is no muscle spasm or tightness. There is some tenderness about the surgical scar. Straight leg raising tests are negative bilaterally. Neurological examination is normal. He is able to squat and recover without difficulty. Heel and toe walk is normal.
“The patient appears to be improving well from the two disc surgeries, but I do not think he will be able to return to any type of manual labor which requires heavy lifting or standing for long periods of time. He also would have difficulty with any excessive bending or stooping. He would be best suited for a sedentary or semi-sedentary occupation.”
There is no evidence to show plaintiff has returned to Dr. Bundrick since May 23, 1973, through the date of trial on February 28, 1974, with any further complaints or symptoms of pain. Plaintiff’s testimony indicates he has begun a course in refrigeration service, although he had not become gainfully employed at the time of trial.
*83 Plaintiff contends the damages he has suffered should entitle him to an award in excess of $100,000 and cites the cases of Edwards v. Sims, 294 So.2d 611 (La.App. 4th Cir. 1974), Breaux v. State Farm Insurance Company, 267 So.2d 230 (La.App. 3rd Cir. 1972), and Reeves v. Louisiana and Arkansas Railway Company, 304 So.2d 370 (La.App. 1st Cir. 1974), in support of this position. In the cited cases in which awards exceeding $100,000 were made, the injured plaintiffs suffered substantially more serious injuries or a greater disability than did plaintiff herein. For this reason we do not find those decisions applicable to mandate a comparative award.
Nor do we find the several cases cited by defendants in which plaintiffs suffering disc injuries were awarded sums in the $12,000 to $25,000 range are sufficiently factually analogous to the instant situation to be used as the criteria for damages to plaintiff herein.
We are of the opinion the sum of $50,000 would be an appropriate award for general damages to plaintiff. In determining this amount we have given consideration to the fact that plaintiff has undergone two operative procedures and has endured some pain and suffering for the period extending from November 18, 1971, through May, 1973. Also, we recognize he has suffered some degree of physical disability relating to his total ability to perform the full range of related trades for which he has had previous work experience and at which he had earned approximately $9,000 per year. The specific degree of disability is of course impossible to determine with certainty. In addition, he is entitled to special medical expenses totaling $5,070.85, which are stipulated in the record.
It is ordered, adjudged and decreed that there be judgment in favor of plaintiff, Tommy Eubanks, and against defendants, Isaac Brasseal, Rose Oil Company of Dixie, /Rose Oil Company Transports, Inc., and the Travelers Insurance Company, in the full sum of $55,070.85, together with legal interest thereon from date of judicial demand until paid, and for all costs of these proceedings. The witness fees of the medical experts testifying by deposition are fixed as follows:
Dr. Hightower $75.00
Dr. Bundrick $50.00
Dr. Coats $75.00
The court reporter’s costs for taking depositions of the foregoing physicians in the sums of $52.50, $50.00 and $79.40, respectively, are hereby taxed as costs.